# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Government, ) | |
| v. ) | Criminal Action No. |
| ) | 5:14-cr-00556-JMC |
| Juan Manuel Fuentes-Morales, ) | |
| ) | **ORDER AND OPINION** |
| Defendant. ) | |
| _____ ) | |

This matter is before the court pursuant to a motion by Defendant Juan Manuel Fuentes-Morales ("Defendant") to suppress statements taken from him after his arrest on July 15, 2014. (ECF No. 176.) On February 25, 2015, the Government filed a response to Defendant's motion to suppress the statement. (ECF No. 185.) For the following reasons, the court **DENIES** Defendant's motion.

## I.     RELEVANT BACKGROUND TO THE PENDING MOTION

Defendant was indicted on September 3, 2014, by a Federal Grand Jury on one count of conspiracy to commit kidnapping, one count of substantive kidnapping, one count of conspiracy to commit hostage taking, two counts of possession and brandishing of a firearm in furtherance of crimes of violence, and one count of knowingly making a false statement or representation to a Department or Agency of the United States. (ECF No. 55.) Defendant moved to suppress statements taken after his arrest on the grounds that they were not given voluntarily and that he was not advised of his *Miranda* rights prior to his questioning. (ECF No. 176 at 1.)

In the early morning of July 15, 2014, Agents with the Federal Bureau of Investigation ("FBI") executed a search warrant at a residence in Garland, North

1

Carolina. (ECF No. 185 at 4.) After the entry, Special Agent ("SA") McConnell arrested Defendant and questioned him without advising him of his *Miranda* rights. (*Id.*) Subsequently, SA Broadus and SA Weingrad advised Defendant of his *Miranda* rights in English and in Spanish and proceeded to interview him. (*Id.*) At the pretrial hearing, Defendant argued that based on the totality of the circumstances, his statements were not given voluntarily, were the product of violence and coercion, and were extracted through a question-first strategy in violation of *Miranda*. (ECF No. 241.) The Government maintained that the statements were voluntary and that it would not seek to admit any statements made by Defendant prior to being advised of his *Miranda* rights. (ECF No. 185 at 1, 4.)

## II.     LEGAL STANDARD AND ANALYSIS

*Miranda* warnings are required when a subject is interrogated while in custody. *Miranda v. Arizona*, 384 U.S. 436, 471 (1966). Where a defendant challenges the admissibility of a statement under *Miranda*, "the government bears the burden of establishing by a preponderance of the evidence that the statement was not the product of custodial interrogation conducted in the absence of *Miranda* warnings." *United States v. Bello-Murillo*, No. 1:13–cr–00310–GBL–3, 2014 WL 6682630, at *2 (E.D. Va. Nov. 14, 2014) (citing *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)). A waiver of *Miranda* rights must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). "Coercive police activity is a necessary predicate to a finding that a waiver of *Miranda* rights is not 'voluntary.'" *United States v. Cristobal*, 293 F.3d 134, 141 (4th Cir. 2002). Defendant seeks to suppress statements taken from him under the theory that his statements were

2

procured through an interrogation technique equivalent to the prohibited question-first strategy and that his *Miranda* waiver was involuntary.

### A. Mid-Interrogation *Miranda* or Question-First Strategy

The question-first strategy refers to: first, intentionally withholding *Miranda* warnings from a suspect, questioning the suspect until securing a confession; then obtaining a waiver of *Miranda* rights from the suspect and covering the same material. *United States v. Mashburn*, 406 F.3d 303, 307 (4th Cir. 2005). The purpose of question-first is to get a confession the suspect would not make if he understood his rights at the outset. *Missouri v. Seibert*, 542 U.S. 600, 613 (2004) (emphasizing that with one confession in hand before the warnings, the interrogator can count on getting its duplicate with little trouble). The issue when interrogators question first and warn later is whether it would be reasonable to find that in those circumstances the warnings could function effectively as *Miranda* intends. *Id.* at 611-12. *Miranda* warnings advise the suspect that he has a real choice about giving an admissible statement. *Id.* at 612. "[W]hen *Miranda* warnings are inserted in the midst of coordinated and continuing interrogation, they are likely to mislead and 'deprive' a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Id.* at 613-14 (citing *Moran v. Burbine*, 475 U.S. 412, 424 (1986)).

The Court's plurality in *Seibert* held that the admissibility of warned statements that follow on the heels of unwarned statements depends on whether *Miranda* warnings delivered mid-interrogation could be effective enough to accomplish their object -- taking into account:

> [T]he completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and

3

> setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first.

*Id*. at 615 (identifying facts that bear on whether *Miranda* warnings delivered mid-interrogation are admissible).  The Court's plurality in *Seibert* distinguished its decision from *Oregon v. Elstad*, 470 U.S. 298, 314 (1985), where it had held that absent improper tactics, a subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement.  *Seibert*, 542 U.S. at 615 (plurality opinion) (distinguishing a good faith *Miranda* mistake from the intentional question-first strategy).  In Justice Kennedy's concurring opinion, he indicated that the plurality's multi-factor test, which would apply to both intentional and unintentional two-stage interrogations, cuts too broadly.  *Id.* at 621-22 (Kennedy, J., concurring).  Instead, Justice Kennedy believed that "[t]he admissibility of postwarning statements should continue to be governed by the principles of *Elstad* unless the deliberate two-step strategy was employed."  *Id.* at 622 (arguing that "postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made").

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds."  *United States v. Mashburn*, 406 F.3d 303, 307 (4th Cir. 2005) (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)).  "Justice Kennedy's opinion therefore

4

represents the holding of the *Seibert* Court: The admissibility of postwarning statements is governed by *Elstad* unless the deliberate 'question-first' strategy is employed." *Id.*

Defendant argued that his statements were taken from him through a question-first strategy in violation of *Miranda*. (ECF No. 241.) The Government responded that Defendant's pre-warning questioning by SA McConnell were aimed at rescuing the victim and that he was not acting in concert with SA Broadus. (ECF No. 241.) Defendant has presented no evidence that the question-first strategy was employed. Therefore, a subsequent administration of *Miranda* warnings should suffice to remove the conditions that precluded admission of the earlier statement. *See Seibert*, 542 U.S. at 622 ((Kennedy, J., concurring) (arguing that an additional warning that explains the likely inadmissibility of the prewarning custodial statement may be sufficient). The fact that Defendant has made an unwarned admission does not warrant a presumption of compulsion as to any subsequent, postwarning statement. *See Mashburn*, 406 F.3d at 309 (citing *Elstad*, 470 U.S. at 314). Rather, the relevant inquiry is whether the second statement was voluntarily made. *See id.*

### B. Miranda Waiver

*Miranda* holds that the "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." *Moran v. Burbine*, 475 U.S. at 421 (quoting *Miranda*, 384 U.S. at 444)). The inquiry has two distinct dimensions: (1) waiver of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception; and (2) waiver must have been made with a full

awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.*

### 1. Voluntariness of the Defendant's Statements

"A statement is involuntary under the Fifth Amendment only if it is 'involuntary' within the meaning of the Due Process Clause." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997). The test for determining whether a statement is voluntary under the Due Process Clause "is whether the confession was 'extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.'" *Id.* (citing *Hutto v. Ross*, 429 U.S. 28, 30 (1976)). To determine whether a statement is voluntary, "courts must consider the 'totality of the circumstances,' including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." *Id.* at 781 (citing *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987)).

"[G]overnment agents may validly make some representations to a defendant or may discuss cooperation without rendering the resulting confession involuntary." *Mashburn*, 406 F.3d at 309 (quoting *United States v. Shears*, 762 F.2d 397, 401 (4th Cir. 1985)). Informing a defendant of the gravity of his suspected offenses and the benefits of cooperation under the federal system does not constitute coercion. *Id.* (citing *Pelton*, 835 F.2d 1067, 1073) ("General encouragement to cooperate is far different from specific promises of leniency."). Any coercion Defendant felt was not the product of official action, but rather the consequence of the severity of the offenses he chose to commit. *See id.* (distinguishing moral and psychological coercion from official coercion).

6

2. Awareness of the Rights and Consequences of Waiver

For a waiver to be voluntary, it must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  *Moran*, 475 U.S. at 421.  The *Miranda* warnings were read to Defendant in English and Spanish, and he stated that he understood them.  (ECF No. 185 at 5.)  Defendant has not presented any evidence indicating otherwise.  Therefore, Defendant's post-warning statements can be properly deemed voluntary.

## IV.     CONCLUSION

Based on the aforementioned reasons, the court **DENIES** Defendant's motion to suppress statements taken from him after his arrest.  (ECF No. 176.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

April 9, 2015
Columbia, South Carolina