# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Government, ) | |
| v. ) | Criminal Action No. |
| ) | 5:14-cr-00556-JMC |
| Juan Manuel Fuentes-Morales, ) | |
| ) | **ORDER AND OPINION** |
| Defendant. ) | |
| ) | |

This matter is before the court pursuant to a motion by Defendant Juan Manuel Fuentes-Morales ("Defendant") to exclude out-of-court identifications of Defendant made by victim (C.S.) ("the victim") and Omar Gomez-Suarez ("Gomez"). (ECF Nos. 195, 241.) In its Omnibus Opposition to Defense Motions, the Government filed a response in opposition to Defendant's motion to suppress the identifications. (ECF No. 228 at 3-11.) For the following reasons, the court finds that Defendant has not demonstrated that the out-of-court identifications by the victim and Gomez were impermissibly suggestive.

## I.     RELEVANT BACKGROUND TO THE PENDING MOTION

Defendant was indicted on September 3, 2014, by a Federal Grand Jury on one count of conspiracy to commit kidnapping, one count of substantive kidnapping, one count of conspiracy to commit hostage taking, two counts of possession and brandishing of a firearm in furtherance of crimes of violence, and one count of knowingly making a false statement or representation to a Department or Agency of the United States. (ECF No. 55.)

1

Following Defendant's arrest on July 15, 2014, Special Agent ("SA") Brostrom interviewed the victim from approximately 6:40 a.m. to 4:00 p.m. (ECF No. 228 at 4.) During this interview, the victim recounted the events leading up to his rescue. (*Id.*) On July 9, 2014, the victim was allegedly accosted at gunpoint in his vehicle by two men who proceeded to detain and transport him to a shed where he was held hostage until his rescue on July 15, 2014. (*Id.*) The victim explained that his head had initially been covered by a mask, which was eventually wrapped with tape. (ECF No. 195.) The victim claims to have observed Defendant, the third alleged kidnapper, in an attempted escape from captivity and during his transportation to the residence where he was ultimately rescued. (ECF Nos. 195, 228 at 5 (arguing that the victim was able to identify Defendant as the person who struck him while attempting to escape).) The victim described Defendant as having a dark black, thin beard. (*Id.*)

Around 3:15 p.m. to 4:00 p.m., SA Brostrom presented the victim with a series of photographs – one by one. (ECF No. 195.) SA Brostrom also presented a photo array consisting of nine photographs to the victim, which did not include Defendant. (ECF No. 241.) The victim identified the person in the first photograph as co-defendant, Luis Castro-Villeda; he identified the person in the second photograph as co-defendant, Ruben Ceja-Rangel; he was unable to fully confirm the identity of the person in the third photograph, a different picture of Ruben Ceja-Rangel; and he identified the person in the fourth photograph as Defendant, a picture taken earlier on July 15, 2015. (ECF Nos. 195 at 2, 228 at 6-7.)

On October 21, 2014, SA Luke Davis interviewed Gomez at the Lexington County Detention Center ("Detention Center"). (ECF No. 228 at 7.) Gomez indicated

2

that he had information to provide regarding the kidnapping case, which he had obtained from Defendant while incarcerated at the Detention Center.  (ECF Nos. 241, 228 at 8.)  SA Davis presented twenty-one colored photographs to Gomez that did not include any names, but numbers designating the respective individuals.  (ECF No. 241.)  The first page of photographs consisted of nine photographs, the second page consisted of seven photographs, and the third page consisted of five photographs.  (ECF No. 241.)  Gomez identified the individual in the eighteenth photograph as Defendant, the individual in the nineteenth photograph as Luis Castro-Villeda, and the individual in the twentieth photograph as Ruben Ceja-Rangel.  (ECF No. 228 at 7.)

## II.     LEGAL STANDARD

The Supreme Court has established a two-step process to determine whether identification testimony is admissible.  *Satcher v. Pruett*, 126 F.3d 561, 566 (4th Cir. 1997) (citing *Manson v. Brathwaite*, 432 U.S. 98, 110 (1977)).  "First, the defendant must show that the photo identification procedure was impermissibly suggestive."  *United States v. Saunders*, 501 F.3d 384, 389 (4th Cir. 2007).  "A procedure is unnecessarily suggestive if a positive identification is likely to result from factors other than the witness's own recollection of the crime."  *Satcher*, 126 F.3d at 566 (citing *United States v. Peoples*, 748 F.2d 934, 935-36 (4th Cir. 1984)).  "Second, if the procedure was unnecessarily suggestive, a court must look at several factors to determine if the identification testimony is nevertheless reliable under the totality of the circumstances."  *Id.* (citing *Manson*, 432 U.S. at 100, 110).  These factors include:

> [T]he opportunity of the witness to view the accused at the scene of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the accused, the level of certainty

> demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.* (citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).  A witness's out-of-court photo identification that is unreliable and therefore inadmissible on due process grounds also renders as inadmissible his subsequent in-court identification.  *Saunders*, 501 F.3d at 390 (citing *Simmons v. United States*, 390 U.S. 377, 383-84 (1968)).

### III.  DISCUSSION

#### A.  Victim's Photo Identification

The photo identification procedure conducted by SA Brostrom with the victim was not impermissibly suggestive.  The Due Process Clause protects individuals from unreliable identifications that result from suggestive procedures.  *See Neil*, 409 U.S. at 196; *Saunders*, 501 F.3d at 391 (stating that informing the witness of information related to the status of the suspects increases the suggestive nature of a photo array).  A determination on the suggestiveness of photo identifications is based on the facts.  *Simmons,* 390 U.S. at 384; *see also United States v. Carroll*, No. 7:12–CR–57–F1, 2013 WL 2382590, at * 5 (E.D.N.C. May 30, 2013) (stating that although a single photograph show up is disfavored in the Fourth Circuit, it is not necessarily impermissibly suggestive).  "[W]hen one-man confrontations occur promptly after the commission of a crime, the police have obtained a good description of the offender, and the show-up is completed under circumstances where it is important to continue the search for the real culprit promptly if he has not been apprehended, they are likely not suggestive."  *United States v. Porter*, 338 Fed. Appx. 300, 304-05 (4th Cir. 2009) (citing *Smith v. Coiner*, 473 F.2d 877, 881 (4th Cir.1973)).

Defendant argued that the manner and timing of the photo identification procedure indicated that it could have been less suggestive. (ECF No. 241.) The Government maintained that the photo show-up was not impermissibly suggestive, emphasizing that: SA Brostrom advised the victim that he was going to be shown several photographs of persons with whom he may or may not have had personal contact during the kidnapping; and that he was not required to identify anyone in the photograph if he were unable to do so. (ECF No. 228 at 6.) At the pretrial hearing, the Government added that SA Brostrom was not sufficiently informed of the investigation to be impermissibly suggestive during the interview and that since all suspects had not been apprehended, exigent circumstances explained the manner of the photo identification. (*See* ECF No. 241.)

The Government bears no burden to prove that a less suggestive means could have been utilized. *Porter*, 338 Fed. Appx. at 305; *see also United States v. Taylor*, 19 Fed. Appx. 62, 64 (4th Cir. 2001) (concluding that "although the photo array itself and the accompanying in-court identification were not ideal, neither was impermissibly suggestive"). The victim's photo identification occurred near in time to his rescue; he provided good descriptions of Defendant; and SA Brostrom indicated that those involved in the investigation believed there were additional suspects. (ECF No. 241.) Even if the court were to find the show-up identification impermissibly suggestive, the identifications were nonetheless reliable. *See Porter*, 338 Fed. Appx. at 305.

Applying the factors set forth in *Neil* and noting that extrinsic evidence cannot be considered in evaluating the reliability of the identification, the court finds that the victim's identifications were reliable. *See United States v. Greene*, 704 F.3d 298, 309-10

(4th Cir. 2013) (citing *Manson*, 432 U.S. at 116).  Defendant argued that the victim's focus on the firearm pointed at him, his limited visibility, criminal background, failure to identify and disclose his father's presence in the photo array, and discrepancies regarding Defendant's facial hair profile rendered the victim's identification unreliable.  (ECF No. 241.)  The court notes that the identification occurred near in time to the crime; the victim identified Defendant immediately and without hesitation; the victim provided a good description of Defendant; and that despite his generally limited visibility, the victim's description of the location of his captivity and the knife used in attempting to escape indicated an opportunity to view Defendant and a heightened level of attention.  *See also Saunders*, 501 F.3d at 392 (citing *Mysholowsky v. New York*, 535 F.2d 194, 197 (2d Cir. 1976) (stating that a victim of a crime is more likely than a casual bystander to pay close attention to the criminal's appearance)).  Based on these facts, the court concludes that the victim's identification was reliable.

### B.  Gomez's Photo Identification

The photo identification procedure conducted by SA Davis with Gomez was not impermissibly suggestive.  At the pretrial hearing, SA Davis indicated that he presented Gomez with three pages of photographs, which included a total of twenty-one photographs.  (ECF No. 241.)  SA Davis asked Gomez whether he knew any of the individuals, and maintained that he had not had any discussions with Gomez as to whether these individuals were involved in the kidnapping.  (*Id.*)  Gomez identified the person in the eighteenth photograph as Defendant.  (*Id.*)  Based on these facts, the court concludes that the identification was not impermissibly suggestive.  Where the court concludes that the identification was not impermissibly suggestive, the inquiry ends.

*United States v. Jones*, 38 Fed. Appx. 901, 902 (4th Cir. 2002) (citing *United States v. Bagley*, 772 F.2d 482, 492 (9th Cir. 1985)).

## IV.    CONCLUSION

Based on the aforementioned reasons, the court finds that Defendant has not demonstrated that the out-of-court identifications by the victim and Gomez were impermissibly suggestive.

**IT IS SO ORDERED.**


April 14, 2015
Columbia, South Carolina                           United States District Judge