IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Government, ) | |
| v. ) | Criminal Action No. |
| ) | 5:14-cr-00556-JMC |
| Juan Manuel Fuentes-Morales, ) | |
| ) | **ORDER AND OPINION** |
| Defendant. ) | |
| ) | |

This matter is before the court pursuant to a motion by Defendant Juan Manuel Fuentes-Morales ("Defendant") to exclude the testimony of a Government informant on the grounds that the testimony was secured through the violation of Defendant's Sixth Amendment right to counsel. (ECF No. 196.)  In its Omnibus Opposition to Defense Motions, the Government filed a response in opposition to Defendant's motion to exclude. (ECF No. 228 at 11-18.)  For the following reasons, the court **DENIES** Defendant's motion.

**I.     RELEVANT BACKGROUND TO THE PENDING MOTION**

Defendant was indicted on September 3, 2014, by a Federal Grand Jury on one count of conspiracy to commit kidnapping, one count of substantive kidnapping, one count of conspiracy to commit hostage taking, two counts of possession and brandishing of a firearm in furtherance of crimes of violence, and one count of knowingly making a false statement or representation to a Department or Agency of the United States. (ECF No. 55.)

Following Defendant's arrest on July 15, 2014, he asserted his Sixth Amendment right to counsel and the Federal Public Defender's Office was appointed to represent him

1

on August 1, 2014.  (ECF No. 196.)  Defendant has since been housed at the Lexington County Detention Center ("Detention Center").  (*Id.*)  On October 21, 2014, SA Luke Davis interviewed Omar Gomez-Suarez ("Gomez") at the Detention Center.  (ECF No. 228 at 7.)  Gomez was cooperating with the Government pursuant to a plea agreement signed on December 19, 2013, which required that he provide truthful information about all criminal activities for which he had knowledge.  (ECF Nos. 196 at 2, 4-5, 228 at 15.)  Gomez indicated that he had shared a cell with Defendant for about two weeks and was also placed in a cell with co-defendant, Luis Castro-Villeda.  (ECF No. 196 at 4-5.)  Gomez indicated that he had information to provide regarding the kidnapping case, which he had obtained from his contact with Defendant and Castro.  (ECF No. 196 at 2, 4-5.)  At the pretrial hearing, the Government indicated that this information included a note depicting the organizational structure of Defendant's alleged drug trafficking organization.

After providing this information, SA Davis testified at the pretrial hearing that he presented twenty-one colored photographs to Gomez, which did not include any names, but numbers designating the respective individuals.  The first page of photographs consisted of nine photographs, the second page consisted of seven photographs, and the third page consisted of five photographs.  Gomez identified the individual in the eighteenth photograph as Defendant, the individual in the nineteenth photograph as Luis Castro-Villeda, and the individual in the twentieth photograph as Ruben Ceja-Rangel.

Defendant claimed that the Government elicited or created an environment likely to elicit incriminating statements from Defendant in violation of *Massiah v. United States*, 377 U.S. 201 (1964).  (ECF No. 196 at 2.)  Defendant argued that Gomez's

2

placement in Defendant's cell as well as Castro's cell was not coincidental, but a result of the Government's manipulation. (ECF No. 196 at 5 (emphasizing that the average inmate population at the Detention Center is 700 and that the odds of two same cell placements (as opposed to pods) is "astronomical").) The Government maintained that Gomez was never given any instructions to interrogate or otherwise attempt to obtain information from Defendant and did not play a role in selecting Gomez's cell. (ECF No. 228 at 13-14.)

## II.     LEGAL STANDARD

Once a Sixth Amendment right to counsel has attached, a defendant is denied that right when law enforcement "deliberately elicit" incriminating statements from him in the absence of his lawyer. *Kuhlmann v. Wilson*, 477 U.S. 436, 457 (1986) (citing *Massiah*, 377 U.S. at 206). "The Sixth Amendment is not violated whenever – by luck or happenstance – the State obtains incriminating statements." *Maine v. Moulton*, 474 U.S. 159, 172 (1985). "However, knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity." *Id.*

The primary concern of the *Massiah* line of decisions is secret interrogation by investigatory techniques that are the equivalent of direct police interrogation. *Kuhlmann*, 477 U.S. at 459. A defendant does not make out a violation simply by "showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to

3

elicit incriminating remarks." *Id.* (citing *United States v. Henry*, 447 U.S. 264, 276 (1980) (Powell, J., concurring)).

The court must look at all of the circumstances to determine whether the informant's actions are "fairly attributable to the government." *United States v. Lentz*, 524 F.3d 501, 520 (4th Cir. 2008) (citing *Thomas v. Cox*, 708 F.2d 132, 136 (4th Cir. 1983)). In *Henry*, the Court held that a paid Government informant, jailed in the same cell as a defendant, who was acting under instructions to be alert to any statements made by the defendant, but not to question the defendant about his charges, was a government agent for Sixth Amendment purposes. *Henry*, 447 U.S. at 268, 270 (emphasizing that even if the Government agent did not intend that the informant would take affirmative steps to secure incriminating information, he must have known that "such propinquity likely" would result).

However, the Court in *Henry* recognized that a "'jail-house informant' was not necessarily a government agent if he was merely 'instructed to overhear conversations and to engage a criminal defendant in some conversations.'" *Id.* at 276 (Powell, J., concurring); *see also United States v. Palacios*, 677 F.3d 234, 247 (4th Cir. 2012) ("We have never held that a jailhouse informant was acting as a government agent in the absence of specific instructions from the government or promises from the government prior to the informant's conversations with an accused person."); *United States v. Lentz*, 524 F.3d 501, 520-21 (4th Cir. 2008) (concluding that an informant with a plea agreement was not a government agent); *Harker v. Maryland*, 800 F.2d 437, 446 (4th Cir. 1986) (stating that a jailhouse informant was not a government agent when he was "not paid, nor was he acting under the instructions or solicitations of the government," but

4

only "responded to a general request for information, and no promises were made to him").

The court finds that Gomez was not a government agent. A defendant's Sixth Amendment right to counsel is violated when law enforcement "deliberately elicit" information from him in the absence of his lawyer. In *Lentz*, the Fourth Circuit found that a jailhouse informant, who was coincidentally placed in the same pod as the defendant, was not a government agent despite having signed a standard plea agreement in an unrelated case. *Lentz*, 524 F.3d at 520-21. "His plea agreement contained standard plea agreement language requiring him to 'cooperate fully and truthfully with the United States' and to provide to the government all information known to him regarding any criminal activity." *United States v. Lentz*, 419 F. Supp. 2d 794, 801 (E.D. Va. 2005) (noting that certain standard plea agreement language concerning a potential downward departure for providing substantial assistance to the government were omitted); *see also Palacios*, 677 F.3d at 246 (concluding that informant with a plea agreement was not a government agent when the government had not played a role in his cell placement and that he had not received any specific instructions regarding his contact with prisoners).

Despite having signed a plea agreement, which included a downward departure for substantial assistance, the court observes that Gomez testified at the pretrial hearing that he was not given any instructions to obtain information from Fuentes-Morales while he was housed at the Detention Center. (ECF No. 128 at 7.) Gomez testified that he advised the Government's agent of this information in a meeting on an unrelated case. Additionally, Gomez indicated at the pretrial hearing that Fuentes-Morales's statements were made freely and voluntarily. Finally, the Government's agent testified that

5

Gomez's cell placement was not directed by anyone at the United States Attorney's Office, Federal Bureau of Investigation, Drug Enforcement Administration, or United States Marshal's Office. Based on these facts, the court concludes that Gomez was not a government agent. Therefore, Defendant's Sixth Amendment right to counsel was not violated.

## IV.     CONCLUSION

Based on the aforementioned reasons, the court **DENIES** Defendant's motion to exclude the testimony of a Government informant on the grounds that the testimony was secured through the violation of Defendant's Sixth Amendment right to counsel.

**IT IS SO ORDERED.**

April 15, 2015
Columbia, South Carolina

*J. Michelle Childs*
United States District Judge

6